JORDAN CREEK PLACERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 98057, 99210.  Promulgated December 19, 1940.

*Clyde C. Sherwood, Esq., John V. Lewis, Esq.,* and *Albert H. Davidson, Esq.,* for the petitioner.
*Arthur L. Murray, Esq.,* for the respondent.

134

OPINION.

OPPER: Petitioner first contends that, having been organized as a "mining partnership" under Idaho law, it is a partnership, and not an association taxable as a corporation. For this conclusion it relies principally upon *Joe Gilovich & Co.,* 6 B. T. A. 864. It seems to us, however, that the distinction from that case will readily appear from a quotation taken from the opinion at page 867. "Petitioner in this case did not conduct its business upon the methods and forms used by incorporated bodies. It had no capital stock or certificates of interest in its ownership; no officers, trustees or directors; it had no charter and was not created by declaration of a trust or writing

of any kind. All of the members of the petitioner actively engaged in the operation of the business and each had a voice in its management."

In the present case petitioner had certificates of interest which it is specifically provided must be canceled and new certificates issued before any transfer of ownership in the enterprise is to be recognized. It had officers consisting of a "managing partner" and a treasurer. It was created by a formal written document setting forth the relationship of the parties to each other and to the enterprise. And only the managing partner was actively engaged in the operation of the business, although, it is true, the other participants had a right to be heard on questions relating to the conduct of the business and were kept advised of its progress.

On the other hand, the conclusion that petitioner is taxable as a corporation is necessitated by more recent cases dealing with the subject, particularly that of *Del Mar Addition* v. *Commissioner* (C. C. A. 5), 113 Fed. (2d) 410. There all of the essential characteristics of the petitioner were present. Here, as in that case, title to the property was taken by one of the individuals "to be held in trust for the partnership." The interest of the parties was represented by shares or certificates which were transferable without terminating the enterprise. There was centralized control. And death of the participants did not effect a dissolution. It is true that complete limitation of personal liability, which is a normal attribute of the corporate form, is not necessarily present here, but neither was it in *Del Mar Addition* v. *Commissioner, supra.* Both this Board, 40 B. T. A. 833, and the court concluded that this was insufficient to remove the taxpayer from the corporate class.

In the present case a perhaps more simple criterion presents itself. The participants in the enterprise expressly constituted themselves a mining partnership under Idaho law. In order to determine the characteristics of such an entity it is hence not unreasonable to be guided by the provisions of Idaho statutes and the pronouncements of Idaho courts as to their meaning. For this purpose one reference will suffice. In *Hawkins* v. *Spokane Hydraulic Min. Co.*, 3 Idaho, 650; 33 Pac. 40, 42, these statutory provisions were analyzed in detail. The court said:

* * * In short, a mining partnership, by virtue of our statute, in all its essential elements is precisely like a corporation. To make this fact perfectly apparent, let us paraphrase out statute. * * * Let us suppose a corporation owning a woolen factory, and regularly organized. Compare the principles announced with our mining partnership.

The court then proceeds to paraphrase the sections of the Idaho Revised Statutes dealing with mining partnerships, substituting "the word 'corporation' for 'mining partnership' and the words 'corporate

property' for 'mine' " and concludes "They are the same principles that govern all corporations, to the extent of the control and management thereof."

Since the parties must be considered to have imported this decision, as an authoritative interpretation of Idaho law, into their contract which set up the enterprise under these very statutory provisions, we conclude that the agreement of the parties alone would be sufficient to demonstrate that this was more nearly like a corporation than other forms of organization. On this issue respondent is sustained.

The second point involves the effectiveness of capital stock tax returns filed by the petitioner after the deficiency notice had been sent but before these proceedings were instituted by the filing of petitions. Allegations of petitioner's action in filing the returns are set forth in the petition and their efficacy is placed in issue by appropriate denials in the answer. Under these circumstances we are of the opinion that the returns, although late and subject to delinquency penalty, were effective in the absence of a prior filing either by petitioner or by respondent in petitioner's behalf. See *Del Mar Addition* v. *Commissioner, supra.*

In *Taylor Securities, Inc.,* 40 B. T. A. 696, the Board had before it the question whether a foreign corporation could obtain the benefits of filing an income tax return for the first time after the proceeding had been commenced and the pleadings completed, and where no issue as to the filing of the returns was raised by an amendment prior to the hearing. In ruling that it could not, the first ground relied upon by the Board (p. 702) was that " * * * the controversy between the parties respecting the effect of the filing of the returns does not represent an issue presented by the pleadings." It was on this ground alone that two Members concurred in the prevailing opinion. There can be no question that the case at bar is distinguishable in this respect, since, as has been noted, the present pleadings leave no doubt that the parties have properly joined issue on the question. The Board's decision in the *Taylor* case, however, is not limited to that phase of the controversy but also rules that the return was too late since it was filed subsequent to the deficiency notice. In reaching that conclusion the opinion states (p. 703) :

* * * By section 233 the allowance to foreign corporations of the credits and deductions ordinarily allowable is specifically predicated upon such corporations filing returns. In view of such a specific prerequisite it is inconceivable that Congress contemplated by that section that taxpayers could wait indefinitely to file returns and eventually when the respondent determined deficiencies against them they could then by filing returns obtain all the benefits to which they would have been entitled if their returns had been timely filed. Such a construction would put a premium on evasion, since a taxpayer would have nothing to lose by not filing a return as required by statute.

We think that this reasoning is not applicable to the proceeding at bar. The purpose of the requirement of a capital stock tax return is not so much to advise the Commissioner of the true facts as to the taxpayer's income, as in the case of a foreign corporation, as it is to record the taxpayer's election of the value to be placed upon its capital stock. See *Haggar Co.* v. *Helvering*, 308 U. S. 309. Petitioner had already filed returns of income as a partnership. The failure to file the capital stock tax returns was the result of a bona fide belief that, since petitioner was not an association taxable as a corporation, the returns were not called for by the statute. When it was advised that respondent's position was to the contrary, it filed the returns as the only method open to it of protecting its position should respondent be sustained in his claim. There had been no previous return of this nature by petitioner. Cf. *Riley Investment Co.* v. *Commissioner*, 311 U. S. 55. We see no reason, therefore, why Congress should have intended that under the circumstances here present the capital stock tax return should not be treated as petitioner's "first return" under the section. See *Haggar Co.* v. *Helvering*, *supra*.

A capital stock tax return, even though delinquent by many months, is effective in the absence of a prior return, at least if filed previous to the deficiency notice. *Flomot Gin Co.*, 40 B. T. A. 689. It seems anomalous to conclude that the notice, which has the effect of apprising the taxpayer for the first time of the Commissioner's position that a return is permissible, should be the very instrument which precludes it from taking action to file one.

There is, on the other hand, ground for concluding that some such privilege is necessary if we are not to impute to the lawmakers an intention to impose an unbearable burden upon taxpayers who have been guilty of no more than an innocent mistake. For the effect of the declaration of value in the capital stock tax return for the first year is to fix that value, subject to certain adjustments here immaterial, for all time to come. Absent some provision in a later act permitting the declared value to be changed, a future development of which that Congress could have had no assurance, a taxpayer would be permanently bound by a declaration of value made in the first return. If we were to hold here that petitioner's erroneous but honest belief that such a return was not called for from it is sufficient to bar it forever from filing a return when respondent's contrary view is brought to its attention, we should be imputing to the Congress an intent to penalize such an error by barring the taxpayer for future years as well from the advantages conferred on other taxpayers similarly situated. This we are unwilling to do. "By the rejection of the delinquent return on the ground that it was filed too late, petitioner was denied the right to make a declaration of value which it was the

obvious purpose of the statute to give. The words of the statute require no such harsh and incongruous result." *Del Mar Addition* v. *Commissioner, supra.* For the reasons stated we conclude that effect may be given in these proceedings to the capital stock tax returns filed by petitioner subsequent to the deficiency notice but prior to the filing of the petitions which brought the controversy before this Board.

Finally, petitioners have treated certain payments made by them as ordinary and necessary business expenses and on that theory have taken deductions thereof on their tax returns. The disallowance of these deductions by respondent creates the remaining contested issue.

The payments in question are those made by petitioner as the result of its acquisition of the mine property. They are called for by a contract between petitioner and the holders of an option on the property, to whom we shall refer as the optionors. It appears that these optionors never at any time owned a proprietary interest in the property. Their participation in the transaction consisted merely of acquiring an option to purchase from the original owners and making the contract we have mentioned, which was in effect a conditional assignment of the option to petitioner. This contract provided in substance that if petitioner determined to exercise the option it would pay to the owners the purchase price of the property as fixed in the original option, the owners would deliver a deed to the optionors, "and thereupon and as part of the same transaction" the optionors would deliver one to petitioner. When the transaction actually occurred, this provision was effectuated by an escrow under which the two deeds were placed with a bank and delivered to petitioner upon its payment of the purchase price to the original owners. It is apparent that thus far no proprietary interest ever vested in the optionors, for by the same transaction in which they obtained title they transferred it.

The payments to be made to the optionors—those giving rise to the present question—are specified in the agreement between them and petitioner and are percentage payments continuing apparently so long as mining operations are carried on. It seems to be recognized by both parties that if these are capital expenditures paid for the acquisition of petitioner's capital asset they are not deductible in the form of business expenses. Respondent refers to *Imperial Type Metal Co.* v. *Commissioner* (C. C. A., 3d Cir.), 106 Fed. (2d) 302, as authority for the statement that payments will be construed as capital items if no interest in the property was retained by the payee. See *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372, 375. See also *Marrs McLean*, 41 B. T. A. 565. For all that appears petitioner does not question this principle but maintains that here an interest was retained by the optionors by virtue of the provision of

the assignment contract which permits the petitioner to "terminate and annul this agreement in which event the sellers [optionors] shall be entitled to a reconveyance of the property from the buyers [petitioner] and may retain as rental and liquidated damages all royalty or cash theretofore paid to them."

It seems to us that this is a provision for acquisition by the optionors, rather than for retention by them, of an interest. Since, as we have seen, they obtained none in the first instance and since such rights as were conferred upon them by that provision were conditioned upon a termination of the agreement at the election of petitioner, an event which has not happened and may never happen, we can not conclude that the payments to the optionors were the result of any interest retained by them.

But even if this were not so, the payments would still fail to furnish the basis for a deduction as ordinary and necessary expenses. Section 23 (a), of the Revenue Acts of 1934 and 1936 provides for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken * * * title or in which he has no equity * * *."

If petitioner can be considered to have made these payments to the optionors in order to prevent them from demanding a conveyance of the property, which seems to be the furthest extreme to which petitioner's contention could reach, and if it be granted therefore that these payments were "required to be made as a condition to the continued use or possession" of the property; there would still be no escape from the incontestible fact that petitioner has an "equity" in the property. Title was taken for it in the usual course by deed duly delivered and for all that appears it continues to be held in the same way. Under such circumstances the deduction specified is not available to petitioner. See *Monroe Sand & Gravel Co.*, 36 B. T. A. 747, 751.

Whether, therefore, the payments in question are thought of as the consideration for the transfer to petitioner of title to the mining property, in the first instance, or as a condition precedent, to its retention of that title, the result is the same. When the option was exercised its province as the medium of acquisition of title disappeared. In its place petitioner had acquired a capital asset the cost of which was the original purchase price, together with the payment for the option. The amounts paid to acquire this capital asset are capital expenditures and may not be deducted in the form of business expense. Upon this issue respondent is sustained.

140

A further issue involving payment of state license tax need not be considered since it is now conceded by petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*